UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVSIION

| | | |
|---|---|---|
| CHRISTOPHER S. DEFRANK, | ) | CASE NO. 4:15-cv-1473 |
| | ) | |
| Plaintiff, | ) | JUDGE JAMES S. GWIN |
| | ) | |
| v. | ) | |
| | ) | MAGISTRATE JUDGE |
| CAROLYN W. COLVIN, Acting | ) | THOMAS M. PARKER |
| COMMISSIONER OF SOCIAL SECURITY, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Defendant. | ) | |
| | ) | |

## I.     Introduction

Plaintiff, Christopher Sean DeFrank ("DeFrank"), seeks judicial review of the final
decision of the Commissioner of Social Security denying his application for Supplemental
Security Income benefits and Disability Insurance Benefits under Title XVI of the Social
Security Act ("Act").  This matter is before the court pursuant to 42 U.S.C. §405(g), 42 U.S.C.
§1383(c)(3), and Local Rule 72.2(b).

For the reasons set forth below, it is recommended that the final decision of the
Commissioner be AFFIRMED.

## II.     Procedural History

Plaintiff applied for supplemental security income and disability insurance benefits in
May 2012.  (Tr. 211-223.)  Mr. DeFrank alleged his disability began on March 1, 2012. (Tr. 211)
Mr. DeFrank's application was denied initially on August 10, 2012 (Tr.119-122) and after
reconsideration on January 7, 2013. (Tr.123-125)  On March 8, 2013, Mr. DeFrank requested an
administrative hearing. (Tr.130)

A hearing was held before the Administrative Law Judge ("ALJ"), Michael Hazel, on February 21, 2014.  (Tr. 28)  The ALJ issued a decision on April 3, 2014, finding that DeFrank was not disabled.  (Tr. 10-27)  DeFrank requested a review of the hearing decision on April 29, 2014. (Tr. 7-9)  The Appeals Council denied review, rendering the ALJ's April 3, 2014 decision final. (Tr. 1-6)

On July 27, 2015, DeFrank filed an appeal of the ALJ's final decision with this court. (Doc. 1)  Defendant answered and filed the transcript of the administrative proceedings on September 28, 2015. (Docs. 8 and 9)  DeFrank filed his brief on the merits on February 5, 2016 (Doc. 12) and Defendant filed its brief on the merits on April 7, 2016, (Doc. 15) making the matter ripe for this court's review.

## III.    Evidence

### A.    Personal, Educational and Vocational Evidence

DeFrank was born on December 10, 1967 and was 44 years old on the date his application was filed.  (Tr. 211)  Currently, he is not married and does not have any children. (Tr. 218)  He has a high school education. (Tr. 35)  Mr. DeFrank previously worked as a store clerk and a videotape operator.  (Tr. 20)

### B.    Medical Evidence

#### 1.  Medical Records Related to Physical Impairments

Plaintiff has had hearing loss in his right ear since 2004.  (Tr. 495)

Plaintiff had an ACL tear in his left knee before the alleged onset date and has a decreased range of motion in his knee.  (Tr. 423, 485)  In office notes from a visit with Dr. David Rich, M.D. in February 2013, plaintiff reported that his torn ACL was not bothering him much at that time. (Tr. 458)

2

Plaintiff also has a history of pain in his right hip.  The record shows that plaintiff has had a decreased range of motion and discomfort in his hips since at least 2012. (Tr. 371, 458, 460, 480, 485)  Office notes from a visit with James Schaer, M.D., on May 25, 2013, state that when plaintiff does not do any strenuous activity, he does not have any real hip discomfort.  (Tr. 460)  Dr. Schaer noted that plaintiff could walk normally and had a good range of motion in his lower extremities.  (Tr. 460)  Dr. Schaer's diagnosis was "avascular necrosis, bilateral hips, stage I right, zero left."  (Tr. 460)  He recommended low impact exercises and told plaintiff to avoid drinking.  (Tr. 460)

On January 6, 2014, plaintiff saw Dr. Rich, M.D., and reported that his hips were not causing him a lot of problems at that time.  (Tr. 482)  Dr. Rich notes that an orthopedist told plaintiff that his improved symptoms were directly related to his drinking which he had stopped at that time. (Tr. 482)  Dr. Rich noted that plaintiff was neurologically intact and diagnosed depression/anxiety and "avascular necrosis of the hips appear stable."  (Tr. 482)

An MRI taken of plaintiff's left hip on May 23, 2014, showed findings for aseptic necrosis in the right hip, with stage III/IV type of injury.  (Tr. 491-492)

### 2.  Medical Evidence of Mental Impairment

Plaintiff has been diagnosed with anxiety and depression.  (Tr. 482)  Office notes of Mark Dechter, M.D., from June 2003 state that plaintiff "may be bipolar."  (Tr. 508)

### C.  Opinion Evidence

### 1.  Consulting Physician – Ravinder Nath, M.D., July 2012

Plaintiff presented to Dr. Ravinder Nath for evaluation on July 5, 2012. (Tr. 437)  Dr. Nath noted that plaintiff's lumbar spine was tender to motion and he had a range of 70%. (Tr. 439)  However, all joints had normal range, his gait was normal and no ambulatory aids were

needed. (Tr. 439)  Dr. Nath found that plaintiff also had slight tenderness in his right elbow likely from tendonitis. (Tr. 439)  Dr. Nath opined that plaintiff's ability to lift would be affected by plaintiff's diagnosis of low back pain and right elbow tenderness.  (Tr. (439)

### 2. Consulting Psychologist – Andrea VanEstenberg, Ph.D. – August 2012

Plaintiff presented to consulting psychologist, Andrea VanEstenberg, Ph.D., on August 2, 2012.  Dr. VanEstenberg diagnosed plaintiff with mood disorder and depressive disorder.  (Tr. 447)  She also noted psychosocial problems due to depression, anxiety, social isolation, social withdrawal, temper issues and concentration issues. (Tr. 448) She assigned a Global Assessment Functioning scale score of 60.  (Tr. 448)

### D. Testimonial Evidence

### 1. DeFrank's Testimony

Plaintiff DeFrank was 46 years old at the time of the hearing.  (Tr. 34)  He is 5'7" and weighs approximately 132 pounds.  (Tr. 34)  He has a driver's license and completed the 12th grade.  (Tr. 35)  Mr. DeFrank does not have health insurance.  (Tr. 35) He explained that he had some vocational training in solar panel installation and Photoshop.  (Tr. 35)  In 1991, DeFrank took one semester of Spanish and oceanography in college.  (Tr. 35)

In April 2012, DeFrank worked one night for R.L. Lipton.  (Tr. 36)  However, DeFrank testified that the physical aspect of the job was too hard on him.  (Tr. 36)  From July 2012 until January 2013, DeFrank worked for Macy's as a sales associate/cashier where he was on his feet almost the entire shift.  (Tr. 36)  He stated this job required a lot of bending, squatting and lifting no more than 25 pounds.  (Tr. 37)  In 2013, he worked for the U.S. Postal Service for about four months. (Tr. 37)  Mr. DeFrank felt that the U.S. Postal Service job was also physical and required a lot of lifting and twisting.  (Tr. 37)  DeFrank testified that working the graveyard shift

at the post office made his back and hip problems even worse because it disrupted his routine. (Tr. 38)

In 2012, DeFrank worked for Village Plaza Sparkle as a nighttime stock clerk.  (Tr. 38) At that job, he pulled pallets out to the floor, took the groceries off the pallets and then stocked the groceries onto the shelves.  (Tr. 38)  From 2006 to 2009, DeFrank worked at Match Frame Video as a videotape operator and editor.  (Tr. 39)  That position required him to be on his feet about 60% of the time and occasionally required him to lift 25-pound boxes. (Tr. 40)  At Post Group, Inc., DeFrank worked as an editor and ran duplication. (Tr. 40)  This position required a lot of standing. (Tr. 40)  He also worked for a company now known as Deluxe Media. (Tr. 41) DeFrank ran duplication at that job, lifted 25-30 pound boxes, and had to bend and squat frequently. (Tr. 42)  Mr. DeFrank also worked for a company called Lightning Dubs, Inc. in 2000-2001 and performed video duplication.  (Tr. 42)  At that position, he was on his feet most of the day and lifted about the same as the other jobs he had held.  (Tr. 42)

Mr. DeFrank testified that he has been diagnosed with avascular necrosis in both hips, but only the right hip sometimes "gives him trouble" walking. (Tr. 42-43)  He described how he used to be a runner but has not run in over a year and a half because of the excruciating pain it causes. (Tr. 43)  DeFrank stated that he experiences pain with his back if he does anything physical and it makes it difficult to walk. (Tr. 43)  He then needs to get off his feet, lie down and use a heating pad. (Tr. 43)   DeFrank stated he injured his back while working at Sparkle. (Tr. 43)

DeFrank was then asked by the ALJ about his elbow tendonitis but DeFrank stated that has gone away.  (Tr. 43-44)  However, DeFrank stated he does still have issues with a tear of his left ACL. (Tr. 44)  Sometimes he will fall on the ground because of this but typically he does not have any problems just walking around normally. (Tr. 44)  DeFrank testified that he has

problems with his right hand but as of the hearing date he had not discussed that with his doctor. (Tr. 44)  He stated he has trouble grabbing things, including gripping the wheel when he drives. (Tr. 45)  He also stated that he is partially deaf in his right ear.  (Tr. 46)  This loss in hearing made it difficult to hear people at his previous jobs and he had concerns he would not hear if someone were to warn him of a possible danger.  (Tr. 46)

DeFrank stated that he has dealt with depression most of his adult life but he is not suicidal. (Tr. 46)  He said that he was tested for bipolar disorder but that condition had been ruled out, as had manic depressive disorder. (Tr. 47)  DeFrank said he was in therapy beginning in April 2001 for about three years but it was not helpful.  (Tr. 47)  He has not treated for any psychological impairments since 2012. (Tr. 48)  DeFrank averages about five hours of sleep each night. (Tr. 48)

As far as hobbies, Mr. Frank likes to paint, draw and write short stories or poetry. (Tr. 48)  He stated he does not have problems getting along with other people. (Tr. 48)  DeFrank testified that he does have trouble focusing and his mind tends to wander about money, his health and his previous injuries.  (Tr. 49)

DeFrank stated that he can probably lift 100 pounds, but not repetitively.  (Tr. 49)  He is able to sit for two hours at a time but it causes his back and leg to hurt.  (Tr. 50)  Ideally, he could stand no longer than two hours if he could then sit for a while.  (Tr. 50-51)

On a typical day, DeFrank reads, stays off his feet, runs errands and takes care of his animals. (Tr. 51)  He will also work on his short stories and his artwork.  (Tr. 51)  These things help him feel more useful and add meaning to his life. (Tr. 52)  As far as household chores, DeFrank is able to vacuum and wash dishes. (Tr. 52)  Mr. DeFrank's attorney asked whether it

6

would be a problem for him to sit for six hours in an eight-hour work day and DeFrank stated he honestly did not know. (Tr. 52)

### 2.  Vocational Expert's Testimony

Vocational Expert ("VE"), Dr. Ja'Nitta Marbury, testified at the hearing.  (Tr. 53-62) Dr. Marbury was first asked to consider a hypothetical individual of the same age, education and work experience as Mr. DeFrank and with the following limitations: occasionally lift and carry 50 pounds, frequently lift and carry 25 pounds, stand or walk about six hours and sit six hours in an eight-hour workday with normal breaks, but would be limited to standing or walking for two hours at a time.  (Tr. 55)  Meaning, the individual would need a break after two hours of sitting or two hours of walking.  The hypothetical individual can push or pull consistent with the lifting limitations; occasionally climb ladders or scaffolds; frequently climb ramps or stairs; and frequently stoop, kneel, crouch or crawl.  (Tr. 55-56)  Dr. Marbury was asked if such a hypothetical individual could perform any of the past work of Mr. DeFrank.  (Tr. 56)  Dr. Marbury testified there would not be any job such an individual could perform because of the 15-minute break requirement at the end of every two hours.  (Tr. 56)  She stated that if such an individual only took one 15-minute break in the morning and one in the afternoon then such an individual could perform the positions held by Mr. DeFrank. (Tr. 57)

The ALJ clarified that in an eight-hour workday, the hypothetical individual would work two hours, take a 15 minute break, work another two hours, take a lunch break, and then work another two hours and have another 15-minute break.  (58-59)  Dr. Marbury then opined that such an individual could perform the sales associate position that Mr. DeFrank had previously held and such an individual could also perform the position of doorkeeper with 18,000 jobs available nationally and 480 jobs statewide.  (Tr. 59)  Such a hypothetical individual could also

7

perform the position of washer with 300,000 jobs available nationally and 11,000 jobs statewide and an auto parts warehouse worker with 400,000 jobs nationally and 22,000 jobs statewide. (Tr. 59)

In the second hypothetical, the ALJ asked the VE to consider the same hypothetical individual but the individual was now limited to simple, routine, repetitive tasks and low stress work involving only occasional decision-making and occasional changes in the work setting. (Tr. 59)  Dr. Marbury testified that such an individual could perform the jobs previously listed which included the sales associate position. (Tr. 60)

In the third hypothetical, the ALJ asked Dr. Marbury to consider the same hypothetical individual with the following limitations: occasionally lift and carry 20 pounds; frequently lift and carry 10 pounds; stand or walk about six hours and sit six hours in an eight-hour workday with normal breaks, push or pull consistent with the lifting limitations; occasionally climb ladders or scaffolds; occasionally climb ramps or stairs, and occasionally stoop, kneel, crouch or crawl.  The ALJ asked whether such an individual could perform DeFrank's past work as a sales associate.  (Tr. 60)  Dr. Marbury testified that such an individual could perform work as a sales associate and could also perform the position of room attendant with 800,000 jobs available nationally and 29,000 jobs statewide.  (Tr. 60)  Dr. Marbury also opined that such an individual could perform the position of laundry sorter with 400,000 jobs available nationally and 21,000 jobs statewide and information clerk with 900,000 jobs available nationally and 26,000 statewide.  (Tr. 61)

For the fourth hypothetical, the ALJ added the same mental limitations she had included in the second hypothetical and the third hypothetical, which would limit the individual to simple, routine, repetitive tasks in a low stress work environment with only occasional decision-making

8

and occasional changes in the work setting. (Tr. 61)  In response, Dr. Marbury said that such an individual could not perform the position of information clerk but could perform a mail clerk position, with 100,000 jobs available nationally and 4,000 jobs statewide. (Tr. 61)

## IV.    Standard for Disability

Under the Act, 42 U.S.C. § 423(a), eligibility for benefit payments depends on the existence of a disability. "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(a). Furthermore:

> [A]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[1]....

42 U.S.C. § 423(d)(2)(A).

In making a determination as to disability under this definition, an ALJ is required to follow a five-step sequential analysis set out in agency regulations. The five steps can be summarized as follows:

1. If the claimant is doing substantial gainful activity, he is not disabled.

2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

3. If claimant is not doing substantial gainful activity, is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment,[13] claimant is presumed disabled without further inquiry.

4. If the impairment does not meet or equal a listed impairment, the ALJ must assess the claimant's residual functional capacity and use it to determine if claimant's

---

[1] "'[W]ork which exists in the national economy' means work which exists in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. § 423 (d)(2)(A).

impairment prevents him from doing past relevant work. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5. If claimant is unable to perform past relevant work, he is not disabled if, based on his vocational factors and residual functional capacity, he is capable of performing other work that exists in significant numbers in the national economy.

20 C.R.F. §§ 404.1520, 416.920; *Bowen v. Yuckert,* 482 U.S. 137, 140-142 (1987).  Under this sequential analysis, the claimant has the burden of proof at Steps One through Four. *Walters v. Comm'r of Soc. Sec.* 127 F.3d 525, 529 (6th Cir. 1997).  The burden shifts to the Commissioner at Step Five to produce evidence that establishes whether the claimant has the RFC and vocational factors to perform work available in the national economy. *Id.*

## V.    The ALJ's Decision

The ALJ issued a decision on April 3, 2014.  A summary of his findings is as follows:

1. DeFrank meets the insured status requirements of the Social Security Act through December 31, 2014.  (Tr. 15)

2. DeFrank has not engaged in substantial gainful activity since March 1, 2012, the alleged onset date.  (Tr. 15)

3. DeFrank has the following severe impairments: avascular necrosis of the hips, left anterior cruciate ligament (ACL) tear, right elbow tendonitis, depression and anxiety.  (Tr. 15)

4. DeFrank does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments.  (Tr. 16)

5. DeFrank has the residual functional capacity ("RFC") to perform a range of light work as defined in 20 CFR 404.1567(b) and 416.967(b) with the ability to lift and/or carry 20 pounds occasionally and 10 pounds frequently, stand and/or walk six hours in an eight-hour workday, and push and/or pull consistent with the above lifting limitations.  He also has the following non-exertional limitations:  occasionally climb ladders, scaffolds, ramps or stairs; occasionally stoop, kneel, crouch or crawl; perform simple, routine and repetitive tasks; occasionally make work-related decisions; and occasionally deal with changes in the work setting. (Tr. 18)

6. DeFrank is unable to perform any past relevant work.  (Tr. 20)

7. DeFrank was born on December 10, 1967 and was 44 years old, which is defined as a younger individual age 18-49 on the alleged disability onset date. (Tr. 21)

8. DeFrank has at least a high school education and is able to communicate in English.  (Tr. 21)

9. Transferability of job skills is not material because the framework of the Medical-Vocational Rules support a finding that claimant is not disabled whether or not the claimant has transferable job skills. (Tr. 21)

10. Considering Mr. DeFrank's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that he can perform.  (Tr. 21)

Based on the foregoing, the ALJ determined that DeFrank had not been under a disability from March 1, 2012 through the date of the ALJ's decision.  (Tr. 22)

## VI. Parties' Arguments

Plaintiff, acting *pro se,* filed his brief on the merits on February 5, 2016.  (Doc. 12) Plaintiff disputes the ALJ's statement that the record contains no medically acceptable or clinical or diagnostic evidence.  (Doc. 12, p. 3)  Plaintiff contends that the ALJ did not "pay attention to some of the details of the case."  (Doc. 12, p. 3)  Plaintiff argues that the ALJ's determination of plaintiff's abilities is inconsistent with the physical assessments made by Dr. David Rich. (Doc. 12, p. 3)  Plaintiff has also attached evidence to his brief.  Plaintiff has attached a "Medical Assessment of Ability to do Work-Related Activities" form completed by Dr. David Rich on December 13, 2015, long after plaintiff's administrative hearing had been heard and the ALJ had issued a decision.  Plaintiff also attached two MRI imaging reports of his right hip: the first from February 2013, and the second from November 2015.  Plaintiff has submitted a second medical assessment form from Dr. Rich, which appears to be the same report with additional notes written on it, but the identity of the author of the additional notes is unknown.  Plaintiff also submitted a progress note from December 8, 2015 reporting the results of an audiometric

evaluation.  Finally, plaintiff has submitted a partial record/note from Dr. Adrian Butler on April 2, 2015 stating that he evaluated plaintiff and diagnosed him with joint arthritis of the right thumb.  (Doc. 12)

Plaintiff also argues that the questioning of the vocational expert was improper.  (Doc. 12, p. 3)  He argues that the ALJ interrupted the VE and did not permit her to answer certain questions.  (Doc. 12, p. 3)  Plaintiff also appears to argue that the ALJ's findings are not supported by substantial evidence and that the court should find that plaintiff is disabled.  (Doc. 12, p. 4)

Defendant filed a brief on April 7, 2016.  (Doc. 15)  Defendant argues that plaintiff has improperly relied on evidence that was not before the ALJ during the administrative proceedings.  (Doc. 15, p. 7)  Defendant argues that the court cannot consider this evidence.  Plaintiff provided the 2004 audiology report to the appeals council.  However, defendant argues that if the appeals council considers new evidence but declines to review a claimant's application for disability insurance benefits, the court cannot consider the new evidence.  Citing *Cline v. Comm'r of Soc. Sec.* 96 F.3d 146, 148 (6th Cir. 1996).  Some of the attachments to plaintiff's brief, such as the medical assessments completed by Dr. Rich, were not submitted to the ALJ or the appeals council.  Defendant argues that the court cannot consider this evidence in determining whether substantial evidence supported the ALJ's findings.  Citing *Wyatt v. Secretary of Health and Human Services,* 974 F.2d 680, 685 (6th Cir. 1992)

Defendant also argues that plaintiff has failed to show that the attachments to his brief are new and material evidence warranting a remand.  Defendant argues that plaintiff has the burden of establishing that any evidence is new and material and that he had good cause for failing to incorporate the additional evidence into the record during the administrative process.  Defendant

argues that some of the attachments are not new evidence and that plaintiff has failed to provide any good reason why he did not incorporate the evidence into the record of the administrative process.  Defendant also contends that plaintiff has failed to establish that any of the attachments are material.  (Dc. 15, p. 10-12)  Defendant argues that substantial evidence supports the ALJ's decision, his assessment of plaintiff's credibility and that he properly relied on the vocational expert's testimony.  The court has considered the parties' arguments and its recommendation is stated below.

**VII.    Law & Analysis**

    **A.    Standard of Review**

This court's review is limited to determining whether there is substantial evidence in the record to support the ALJ's findings of fact and whether the correct legal standards were applied. *See Elam v. Comm'r of Soc. Sec.,* 348 F.3d 124, 125 (6th Cir. 2003) ("decision must be affirmed if the administrative law judge's findings and inferences are reasonably drawn from the record or supported by substantial evidence, even if that evidence could support a contrary decision."); *Kinsella v. Schweiker,* 708 F.2d  1058, 1059 (6th Cir. 1983).  Substantial evidence has been defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of Health and Human Servs.,* 25 F.3d 284, 286 (6th Cir. 1994).

The Act provides that "the findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. §§ 405(g) and 1383(c)(3). The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion.  *Buxton v. Halter,* 246 F.3d 762,

772-3 (6th Cir. 2001) (*citing Mullen v. Bowen,* 800 F.2d 535,545 (6th Cir. 1986); *see also Her v. Comm'r of Soc. Sec.,* 203 F.3d 288, 389-90 (6th Cir. 1999) ("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached."  *See Key v. Callahan,* 109 F.3d 270, 273 (6th Cir. 1997).  This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference.  *Mullen,* 800 F.2d at 545 (*citing Baker v. Heckler,* 730 F.2d 1147, 1150 (8th Cir. 1984).

In addition to considering whether the Commissioner's decision was supported by substantial evidence, the court must determine whether proper legal standards were applied. Failure of the Commissioner to apply the correct legal standards as promulgated by the regulations is grounds for reversal.  *See e.g. White v. Comm'r of Soc. Sec.* 572 F.3d 272, 281 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.,* 478 F.3d 742, 746 (6th Cir. 2006) ("Even if supported by substantial evidence, however, a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.")

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result."  *Fleischer v. Astrue,* 774 F.Supp.2d 875, 877 (N.D. Ohio 2011) (*quoting Sarchet v. Chater,* 78 F.3d 305, 307 (7th Cir. 1996); *accord Shrader v. Astrue,* No. 11-13000, 2012 U.S. Dist. LEXIS 157595 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is not mentioned, the court cannot determine if it was discounted or merely overlooked."); *McHugh v. Astrue,* No. 1:10-cv-734, 2011 U.S. Dist. LEXIS 141342 (S.D. Ohio Nov. 15, 2011); *Gilliams v. Astrue,* No. 2:10-CV-017, 2010 U.S. Dist.

14

LEXIS 72346 (E.D. Tenn. July 19, 2010); *Hook v. Astrue*, No. 1:09-cv-19822010, 2010 U.S. Dist. LEXIS 75321 (N.D. Ohio July 9, 2010).

     **B.**     **Evidence Relied Upon by the ALJ**

     Plaintiff's Brief on the merits takes a two-fold approach.  First, he addresses his arguments concerning the analysis performed by the ALJ.  Next, he discusses new evidence he presented in conjunction with his brief.  The court will address the new evidence in the subsection C immediately following.

     Plaintiff asserts that his conditions equal the criteria of a listed impairment in 20 CFR, Part 404, Subpart P, Appx.1.  (Doc. 12, p. 2)  But plaintiff has not supported that assertion with any analysis or arguments concerning the evidence of record.  The ALJ, on the other hand, analyzed each of the conditions claimed by plaintiff and found that none met or were medically equivalent to the criteria of listing 1.02.  In addition, the ALJ set forth a detailed analysis of the potential applicability of listings 12.04 and 12.06 to plaintiff's mental impairments.  Upon his analysis, he concluded that none of the criteria for a mental health listing was met.  Substantial evidence – primarily resulting from plaintiff's own description of his activities – but also arising from the lack of corroborative expert opinion, supported the ALJ's conclusion that the severity of plaintiff's mental impairments, considered singly and in combination, did not meet or medically equal the criteria of listings 12.04 and 12.06

     Plaintiff asserts that the ALJ did not "pay attention to some of the details of the case and also tends to contradict some of his own findings."  (Doc. 12 p. 3)  In support of this conclusion plaintiff points to a 2004 consultation report concerning his hearing. The note reflected the impression of a Dr. Dickman that plaintiff had experienced "Sudden sensorineural hearing loss, Rt. Ear."  And the report reflected a finding that the hearing loss was "profound."  (Tr. 495)

Plaintiff argues that the ALJ was wrong to ignore this report and conclude that "the record contains no medically acceptable clinical or diagnostic evidence of such an impairment."  (Tr. 16)  While it is understandable that plaintiff disagrees with the ALJ's conclusions concerning his hearing loss, the record supports the ALJ's conclusion.  First, the medical record is a single pages that references the giving of a short-duration prescription for prednisone, a recommendation for an MRI (which apparently was never performed) and an instruction to return in 10 days.  (Tr. 495)  That record provides no information suggesting plaintiff could not work or was disabled.  The hearing transcript contained no testimony by plaintiff that his hearing issue prevented him from being able to work.  (Tr. 46)  To the contrary, plaintiff's testimony contained his reasonable speculations about the potential impacts that his hearing may have had on workplace safety.  (Id.).  But nothing in the record supports plaintiff's contention that his hearing loss was in any way disabling.  Because plaintiff bears the burden of proof of the existence of a disability, he did not meet his burden in regard to the claim of his hearing loss.  Therefore, the court has no basis upon which to conclude that the ALJ's conclusion was not supported by substantial evidence or that he applied the incorrect legal procedures or analysis with respect to this issue.

The remaining arguments advanced by plaintiff are addressed below.  The court has reviewed the record that was before the ALJ and finds that there was substantial evidence in the record to support the ALJ's findings of fact and that he applied the correct legal standards were applied.

### C.    New Evidence

Many of the arguments presented in plaintiff's brief rely on evidence that was not presented to the ALJ.  Plaintiff cites an October 2004 treatment note that was not in the record

before the ALJ but was presented to the appeals council after the ALJ had issued a decision.  As argued by defendant, the court cannot consider this new evidence in deciding whether to uphold, modify or reverse the ALJ's decision.  *Cline v. Comm'r of Soc. Sec.* 96 F.3d 146, 148 (6th Cir. 1996)

In addition to the additional evidence that was submitted to the appeals council, plaintiff has attached new evidence to the brief he submitted to the court for review.  Many of the arguments stated in plaintiff's brief are dependent on these attachments.  For example, plaintiff makes several references to the medical assessments completed by Dr. Rich on December 31, 2015.  However, the court is not permitted to consider any new evidence in determining whether substantial evidence supports the ALJ's findings.  *See Wyatt v. Secretary of Health and Human Services,* 974 F.2d 680, 685 (6th Cir. 1992) ("The court is confined to review evidence that was available to the Secretary, and to determine whether the decision of the Secretary is supported by substantial evidence.")

While the court is not permitted to vacate the ALJ's decision based on new evidence, the court is permitted to remand the matter for further consideration. *Wills v. Secretary of Health & Human Servs.,* 727 F.2d 551, 553-54 (6th Cir. 1984).  However, the court can remand for further consideration of the evidence only where the party seeking remand shows that the new evidence is material.  *Id.* The power of a reviewing court to remand for the consideration of new evidence is governed by 42 U.S.C. § 405(g), "[t]he court … may at any time order additional evidence to be taken before the Secretary, but only upon showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . ."  The party seeking remand bears the burden of showing that a remand

is proper under section 405.  *Willis v. Secretary of Health and Human Services,* 727 F.2d 551 (6th Cir. 1984).

The hearing before the administrative judge took place on February 21, 2014.  (Tr. 30) With the exception of the MRI imaging report from February 2013, the evidence attached to plaintiff's brief post-dates the administrative hearing and the date plaintiff was last insured, December 13, 2014.  A claimant must provide medical evidence of his impairments during the time he claims a disability.  20 C.F.R. § 404.1512(c).  Evidence of a subsequent deterioration or change in condition after the administrative hearing is deemed immaterial.  *Sizemore v. Secretary of Health & Human Servs.*  865 F.2d 709, 712 (6th Cir. 1988).  The critical date in this matter is the date upon which plaintiff's insured status expired, December 31, 2014.[2]  (Tr. 65)  Thus, the later medical assessment from Dr. Rich, which states that it is completed regarding plaintiff's condition as of October 2, 2015, does not involve the time in which the claimant's disability was considered.  See *Barnett v. Sec'y of Health & Human Servs.,* 812 F.2d 1406, 1987 U.S. App. LEXIS 1012 at *8 (6th Cir. 1987).  Nor do several other documents which plaintiff has attached to his brief.

Dr. Rich's first medical assessment was completed on December 31, 2015.  (Doc. 12) Someone has hand-written "PHYSICAL ASSESSMENT AS OF APRRIL 4, 2014" across the top of this assessment.  (Doc. 12)  Consequently, this assessment, in theory, could relate to the plaintiff's condition during the relevant period before December 31, 2014.  However, plaintiff had the burden of showing that he had good cause for his failure to incorporate this additional evidence into the record during the administrative process.  42 U.S.C. § 405(g); *Foster v. Halter,* F.3d 348, 357 (6th Cir. 2001) and he has not made any attempt to do so.  It is also questionable

---

[2]  As noted by defendant, plaintiff argues that he was insured through December 31, 2015, but this misstatement was based on a comment made by plaintiff's attorney at the administrative hearing. The actual date was December 31, 2014.

whether this medical assessment accurately reflected plaintiff's condition as of April 4, 2014, as Dr. Rich did not complete the form until December 31, 2015 and the most recent medical records from Dr. Rich in the transcript were from January 2014.

The court also agrees that the new evidence which plaintiff has attached to his brief was not material and was unlikely to alter the ALJ's decision.  As noted by defendant, Dr. Rich's January 2014 notes state that plaintiff's hips were not causing him any problems at that time, his diagnosis of avascular necrosis appeared stable and that plaintiff was in no acute distress.  (Tr. 482)  Thus, the limitations stated in Dr. Rich's medical assessments prepared in December 2015 appear to be inconsistent with the doctor's own notes from plaintiff's last visit as evidenced in the record.

Nor are the MRI studies material because they only confirm the evidence that was already in the record.  Both MRI studies confirm that plaintiff had avascular necrosis in his hips. The ALJ acknowledged that plaintiff had this condition and accounted for the limitations caused by that impairment in his finding.  Plaintiff has not provided any evidence showing that his ability to work has been further restricted due to the findings of the more recent MRI attached to his brief.  Also, as noted above, even if the more recent MRI showed a deterioration or change in plaintiff's condition, because it occurred after the administrative hearing, it is deemed immaterial.[3]  *Sizemore,* 865 F.2d at 712.

Finally, plaintiff has not shown, or even argued, that the 2015 audiology report and treatment note regarding his thumb are material.  He has not shown that either of these

---

[3] If in fact the claimant's condition has seriously degenerated, the appropriate remedy would be to initiate a new claim for benefits as of the date that the condition aggravated to the point of constituting a disabling impairment. *Oliver v. Secretary of Health & Human Serv*., 804 F.2d 964, 966 (6th Cir. 1986); *Ward v. Schweiker,* 686 F.2d 762, 766 & n.4 (9th Cir. 1982)

conditions would further restrict his ability to work or that they would have had any impact on the ALJ's findings.

The court is not permitted to review the new evidence attached to plaintiff's brief when considering whether the decision of the ALJ is supported by substantial evidence.  Nor has plaintiff shown that the new evidence is material to the claimed disability during the relevant period of time.  For these reasons, the plaintiff is not entitled to a remand of this case so that the ALJ can consider the new evidence attached to plaintiff's brief.

### D.     Credibility of Mr. DeFrank

Plaintiff also seems to argue that the ALJ did not properly evaluate plaintiff's credibility. It is for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant. *Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 531 (6th  Cir. 1997); *Crum v. Sullivan,* 921 F.2d 642, 644 (6th Cir. 1990); *Kirk v. Sec'y of Health & Human Servs*., 667 F.2d 524, 538 (6th Cir. 1981).  However, the ALJ is not free to make credibility determinations based solely upon an "intangible or intuitive notion about an individual's credibility." Soc. Sec. Rul. 96-7p, 1996 WL 374186, at * 4.  Rather, such determinations must find support in the record. Whenever a claimant's complaints regarding symptoms, or their intensity and persistence, are not supported by objective medical evidence, the ALJ must make a determination of the credibility of the claimant in connection with his or her complaints "based on a consideration of the entire case record." *Rogers v. Comm'r of Soc. Sec.* 486 F.3d 234, 247 (6th Cir. 2007).

The court finds that the ALJ properly evaluated the credibility of plaintiff and has provided an adequate explanation for his findings.  The ALJ found that the objective medical evidence supported some of plaintiff's allegations.  However, he determined that the weight of the evidence did not support a finding that the claimant was as limited as he alleged.  The ALJ

pointed to places in the record where plaintiff's avascular necrosis has been described as stage zero on the left and state I on the right. (Tr. 19)  The ALJ also noted that the records show that plaintiff retains full strength of his extremities and his gait is normal.  (Tr. 19)  In February 2013, medical providers indicated that the claimant's knee did not appear to bother him, his elbow tenderness was only slight and that he had normal range of motion of the upper extremities.  (Tr. 19)  The ALJ also noted that plaintiff's daily activities have not been limited to the extent one would expect of a disabled individual.  (Tr. 19-20)  Thus, the ALJ properly evaluated plaintiff's credibility and based his findings as to credibility on evidence from the record.

### D.  Vocational Expert Testimony

Plaintiff argues that the ALJ pressured the VE to change her responses during the administrative hearing.  However, after reviewing the record, it does not appear that the ALJ asked improper questions of the VE.  After asking the first hypothetical related to breaks during the workday, the ALJ clarified the break limitation and the VE testified that the hypothetical individual would be able to perform certain work and that said work was available in Ohio and the national economy.  The record does not reflect anything unusual about the ALJ's questioning of the VE or that the VE was pressured to testify in a certain way.

### VII.    Conclusion

In summary, the court should find that the ALJ's decision is supported by substantial evidence in the record.  Plaintiff has not shown that the attachments to his brief represent new, material evidence that should require the court to remand this case for further consideration. Accordingly, Mr. DeFrank has not demonstrated a basis upon which to reverse or remand the

Commissioner's decision.  For these reasons, I recommend that the final decision of the

Commissioner be AFFIRMED, pursuant to 42 U.S.C. § 405(g).


Dated: June 14, 2016

Thomas M. Parker
United States Magistrate Judge

—————————————————————

**OBJECTIONS**

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this Report and Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  See *U.S. v. Walters*, 638 F.2d 947 (6th Cir. 1981).  See also *Thomas v. Arn,* 474 U.S. 140 (1985), reh'g denied, 474 U.S. 1111 (1986).**