UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
-------------------------------------------------------

| | | |
|---|---|---|
| CHRISTOPHER DEFRANK, | : | CASE NO. 4:15-cv-1473 |
| Plaintiff, | : | |
| vs. | : | OPINION & ORDER |
| | : | [Resolving Doc. 17] |
| CAROLYN W. COLVIN, Acting, Commissioner of Social Security | : | |
| Defendant. | : | |

-------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

## I. Introduction

*Pro se* Plaintiff Christopher Sean DeFrank brings claims for wrongful denial of Supplemental Security Income Disability and Disability Insurance benefits.[1] Magistrate Judge Thomas M. Parker recommended affirming the Administrative Law Judge's ("ALJ") denial of benefits.[2] Plaintiff objects.[3] For the reasons below, this Court **ADOPTS** the Recommendation of the Magistrate Judge, and **AFFIRMS** the ALJ's decision.

## II. Background

In May 2012, Plaintiff DeFrank filed for benefits. He alleged a March 1, 2012 onset disability date. DeFrank alleged several physical and mental impairments, including avascular necrosis of the hips, left anterior cruciate ligament (ACL) tear, right elbow tendonitis, depression, and anxiety.[4]

---

[1] Doc. 1 ¶ 2.
[2] Doc. 16 at 1.
[3] Doc. 17 at 1.
[4] Doc. 16 at 2-3.

Case No.15-CV-1473
Gwin, J.

On August 10, 2012, the Social Security Administration denied DeFrank's request for benefits.[5] On January 7, 2013, the Social Security Administration again denied DeFrank's request after reconsideration.[6]

On February 21, 2014, Administrative Law Judge Michael Hazel held a hearing on DeFrank's benefits application. On April 3, 2014, the ALJ found that DeFrank was not disabled and denied DeFrank's application.[7]

The ALJ made the following findings:

1. DeFrank meets the insured status requirements of the Social Security Act through December 31, 2014.

2. DeFrank has not engaged in substantial gainful activity since March 1, 2012, the alleged onset date.

3. DeFrank has the following severe impairments: avascular necrosis of the hips, left anterior cruciate ligament (ACL) tear, right elbow tendonitis, depression and anxiety.

4. DeFrank does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments.

5. DeFrank has the residual functional capacity ("RFC") to perform a range of light work as defined in 20 CFR 404.1567(b) and 416.967(b) with the ability to lift and/or carry 20 pounds occasionally and 10 pounds frequently, stand and/or walk six hours in an eight-hour workday, and push and/or pull consistent with the above lifting limitations. He also has the following nonexertional limitations: occasionally climb ladders, scaffolds, ramps or stairs; occasionally stoop, kneel, crouch or crawl; perform simple, routine and

---

[5] *Id.* at 1.
[6] *Id.*
[7] *Id.* at 2.

-2-

Case No.15-CV-1473
Gwin, J.

> repetitive tasks; occasionally make work-related decisions; and occasionally deal with changes in the work setting.
>
> 6. DeFrank is unable to perform any past relevant work.
>
> 7. DeFrank was born on December 10, 1967 and was 44 years old, which is defined as a younger individual age 18-49 on the alleged disability onset date.
>
> 8. DeFrank has at least a high school education and is able to communicate in English.
>
> 9. Transferability of job skills is not material because the framework of the Medical-Vocational Rules support a finding that claimant is not disabled whether or not the claimant has transferable job skills.
>
> 10. Considering Mr. DeFrank's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that he can perform.[8]

Based on the foregoing, the ALJ determined that DeFrank had not been under a disability from March 1, 2012 through the date of the ALJ's decision.[9]

On April 29, 2014, DeFrank requested a review of the hearing. The Appeals Council denied DeFrank's request for review.[10] The ALJ's April 3, 2014 decision became final with the Appeals Council's denial.

---

[8] Doc. 9 at 17-25. Plaintiff DeFrank objects that the ALJ's findings are inconsistent. Specifically, he argues that the ALJ wrote in the first paragraph, "The combination of impairments listed above has more than a minimal effect on the claimant's ability to perform work related functions." In the next paragraph, the ALJ wrote, "However, there is nothing to suggest these impairments cause more than a minimal limitation in his ability to perform work-related activity." Plaintiff writes, "it can't be both. . . how is this *not* an inconsistency." Doc. 17 at 1.
  The document which Plaintiff alleges is inconsistent refers to two different diagnoses. The diagnoses that have more than a minimal effect on the claimant's ability to perform work related functions refer to avascular necrosis, left anterior cruciate ligament tear, right elbow tendonitis, depression, and anxiety. However, the diagnoses that do not result in a more than minimal limitation refer to asthma and alcohol abuse. There is therefore no inconsistency. Doc. 9 at 19-20.
[9] Doc. 9 at 22.
[10] Doc. 16 at 2.

-3-

Case No.15-CV-1473
Gwin, J.

On July 27, 2015, DeFrank filed an appeal of the ALJ's decision with this Court. Plaintiff filed his brief on February 5, 2016.[11]

On June 14, 2016, Magistrate Judge Parker filed his Report and Recommendation.[12] Magistrate Judge Parker recommends affirming the ALJ's denial of DeFrank's benefits application.

On June 30, 2016, Plaintiff filed objections to the Report and Recommendation. This Court discerns three objections. First, Plaintiff argues that the ALJ improperly assessed him as not disabled; Plaintiff argues that he is disabled and cannot engage in substantial gainful activity. Second, Plaintiff submits new evidence and seems to argue that his case should be remanded. Finally, Plaintiff argues that the ALJ improperly questioned the vocational expert. This Court reviews DeFrank's objections *de novo*.[13]

On July 14, 2016, Defendant filed a response to Plaintiff's objections to the report and recommendation decision requesting that this Court adopt the Magistrate's report and recommendation and affirm the ALJ's decision.[14]

### III. Legal Standard

In reviewing an ALJ's disability determination under the Social Security Act, a district court reviews whether the ALJ's decision is "supported by substantial evidence and is made pursuant to proper legal standards."[15] Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[16]

---

[11] Doc. 12.
[12] Doc. 16 at 1.
[13] 28 U.S.C. § 636(b)(1) (requiring *de novo* review of the claimant's objections to a report and recommendation).
[14] Doc. 18 at 2.
[15] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007); *see also* 42 U.S.C. § 405(g).
[16] *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quotation omitted).

-4-

Case No.15-CV-1473
Gwin, J.

A district court is limited in what it can review. Specifically, a district court should not try to resolve "conflicts in evidence or decide questions of credibility."[17] A district court also may not reverse an ALJ's decision when substantial evidence supports it, even if the court would have made a different decision.[18]

To establish disability under the Social Security Act, a plaintiff must show that he cannot engage in any substantial gainful activity because of a "medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months."[19] Plaintiff's impairment must prevent him from doing his previous work or any other work existing in significant numbers in the national economy.[20]

## IV. Discussion

*A. Evidence relied upon by the ALJ*

Plaintiff DeFrank challenges the ALJ's conclusion that he is not disabled. Specifically, DeFrank argues that he meets the listed disorders of the Social Security Act for musculoskeletal impairment and mental disorders.[21] This Court finds that the ALJ's decision is supported by substantial evidence.

---

[17] *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007).
[18] Plaintiff is correct that an ALJ's decision will be upheld "[e]ven if the evidence could also support another conclusion, the decision of the ALJ must stand . . . ." Doc. 17 at 6. This is the correct standard. *See Siterlet v. Sec. of Health and Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987); *see also Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003) (holding that the ALJ's decision cannot be overturned so long as the ALJ's decision was supported by substantial evidence). Plaintiff asked the Court to clarify the "zone of choice" rule under the substantial evidence standard. Doc. 17 at 6. The Sixth Circuit has explained "zone of choice" as follows: "The Commissioner's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion. The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts. If the Commissioner's decision is supported by substantial evidence, a reviewing court must affirm." *Felisky v. Bowen,* 35 F.3d 1027, 1035 (6th Cir. 1994).

[19] *See* 42 U.S.C. § 423(d).
[20] *Id.*
[21] Doc. 17 at 3-4.

-5-

Case No.15-CV-1473
Gwin, J.

### A. *Musculoskeletal impairment*

First, Plaintiff claims that he has a musculoskeletal impairment, which is one of the listed impairments of the Social Security Act. Plaintiff claims that his inability to ambulate effectively equals an impairment listed in Section 1.03 of the Social Security Act. The ALJ disagreed.[22] This Court affirms.

Under the Social Security Act, an inability to ambulate effectively is defined as "an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities."[23] "To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living."[24] Plaintiff has not shown that he is unable to ambulate effectively.

Plaintiff is correct that "[t]he ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation."[25] However, in addition to not requiring an assistive device, Plaintiff also is able to "carry out routine ambulatory activities."[26] Plaintiff explains that he can "wash dishes and occasionally run the vacuum," take care of his pets, and run errands.[27] He testified that there are not any chores he needs help with.[28] His chores consist of "mostly light housework."[29] When he is "[n]ormally . . . walking around," he does not have any issues.[30] One limitation Plaintiff DeFrank apparently

---

[22] The ALJ concluded that "despite the claimant's hip and knee conditions, he retains the ability to ambulate effectively." DeFrank therefore did "not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." Doc. 9 at 20.

[23] 20 C.F.R. § Pt. 404, Subpt. P, App. 1.
[24] 20 C.F.R. § Pt. 404, Subpt. P, App. 1.
[25] Doc. 17 at 4; *see also* 20 C.F.R. § Pt. 404, Subpt. P, App. 1.
[26] 20 C.F.R. § Pt. 404, Subpt. P, App. 1; Doc. 9 at 55.
[27] Plaintiff has two cats, three snakes, and a lizard. Transcript of Hearing at 55 (No. 9).
[28] *Id.* at 56.
[29] *Id.* at 56.
[30] *Id.* at 48.

-6-

experiences is an inability to cut his mother's lawn.[31] Nonetheless, the ALJ's conclusions that Plaintiff's ambulatory abilities allow him to perform and complete daily tasks and care for himself is supported by substantial evidence.

Plaintiff has not met his burden of proving that his impairment meets the requirements of listing 1.03.

### B. Mental disorders

Second, Plaintiff contends that his mental disorders meet the requirements of listings 12.04 and 12.06. Plaintiff has been diagnosed with psychological problems due to depression and anxiety, as well as social isolation, withdrawal, temper, and concentration issues.[32]

Substantial evidence supported the ALJ's conclusion that the severity of Plaintiff's mental impairments, considered singly or in combination, did not meet the criteria of listings 12.04 or 12.06.

To meet listings 12.04 and 12.06, a claimant must fulfill the criteria of either paragraph B or C.[33] The ALJ set forth a detailed analysis and concluded that none of the criteria for a mental health listing were met.[34] This Court affirms.

Plaintiff does not meet paragraph B of 12.04 or 12.06.[35] Plaintiff is able to independently perform his own household chores and has no difficulties in social functioning, has only

---

[31] Doc. 17 at 4.
[32] Plaintiff suffers from depression and anxiety. Doc. 9 at 486. Further, the Social Security Administration recommended Plaintiff DeFrank to Dr. VanEstenberg, who diagnosed him with social isolation, social withdrawal, temper issues and concentration issues. Doc. 17 at 3. The ALJ gave Dr. VanEstenberg's findings moderate weight. Doc. 9 at 24.
[33] Doc. 9 at 20-22.
[34] Pursuant to paragraph B, a claimant's mental impairments must meet at least two of the following: marked restriction of activities of daily living; or marked difficulties in maintaining social functioning; or marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration. Plaintiff does not meet paragraph B of 12.04 or 12.06. 20 C.F.R. § Pt. 404, Subpt. P, App. 1. Plaintiff is able to independently perform his own household chores and has no difficulties in social functioning, has only moderate difficulties in concentration, persistence, or pace, and has experienced no episodes of decompensation of extended duration. Doc. 9 at 20-22. The ALJ properly concluded that Plaintiff has not put forth evidence establishing the presence of paragraph C criteria. *Id.*

-7-

Case No.15-CV-1473
Gwin, J.

moderate difficulties in concentration, persistence, or pace, and has experienced no episodes of decompensation of extended duration.[36]

Therefore, substantial evidence exists to support the ALJ's conclusion that DeFrank does not meet listings 1.03, 12.04, or 12.06.

B. *New evidence*[37]

Plaintiff has submitted new evidence since the February 2014 hearing. In so doing, it appears that Plaintiff is requesting a "sentence six" remand. As is relevant here, a sentence six remand is when a court "[reopens] the administrative record so that the Commissioner may consider 'new and material evidence that for good cause was not previously presented to' the Commissioner."[38]

For the following reasons, the new evidence Plaintiff included in his brief does not justify a sentence six remand.

   a. *Standard for new evidence*

When a Plaintiff presents new evidence, a remand is appropriate only if the claimant (1) shows that the new evidence is material, and (2) that there is good cause "for failure to incorporate such evidence into the record in a prior proceeding."[39]

New evidence is "material" if it "would likely change the Commissioner's decision."[40] A claimant must also provide good cause "for the failure to incorporate such evidence into the

---

[35] 20 C.F.R. § Pt. 404, Subpt. P, App. 1.
[36] Doc. 9 at 20-22.
[37] In his objection, Plaintiff admits understandable confusion over when a claimant is allowed to submit new evidence. Doc. 17. District courts cannot consider evidence that a plaintiff previously submitted to the Appeals Council. In this case, Plaintiff submitted the October 2004 treatment note to the Appeals Council. Because the evidence has already been considered by the Appeals Council, district courts cannot review it in deciding whether to "uphold, modify, or reverse the ALJ's decision." *See Cline v. Comm'r of Soc. Sec.* 96 F.3d 146, 148 (6th Cir. 1996). Additionally, courts may review new evidence *not* submitted to the Appeals Council. A district court cannot, however, vacate an ALJ's findings based on new evidence. A district court may only remand or affirm based on new evidence. *See Wyatt v. Sec. Health & Human Servs*, 974 F.2d 680, 685 (6th Cir. 1992).
[38] *Hollon ex rel. Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 483 (6th Cir. 2006) (citing *Faucher v. Secretary of HHS*, 17 F.3d 171, 174 (6th Cir. 1994)).
[39] *Hollon*, 447 F.3d at 483.

-8-

Case No.15-CV-1473
Gwin, J.

record in a prior proceeding."[41] To justify a remand, the claimant must show *both* materiality and good cause. Plaintiff has not met this burden.

### b. *Evidence Available at Time of Administrative Hearing*

Some of the evidence Plaintiff points to is not "new." Evidence is "new" only if it was not in existence or available to the claimant at the time of the prior administrative proceeding.[42]

Two pieces of medical evidence were "in existence or available to the claimant at the time of the administrative proceeding."[43] Neither justifies a remand.

The first is an October 2004 treatment note showing hearing loss, which pre-dates Plaintiff's alleged onset date by about eight years. The note was not in the record before the ALJ, but Plaintiff's counsel submitted it to the Appeals Council after the ALJ had issued a decision.[44] The Sixth Circuit has held that when a plaintiff submitted evidence to the Appeals Council that had not been in the record before the ALJ, a district court cannot consider it.[45] This Court therefore cannot consider the October 2004 treatment note in its review of the ALJ's decision.

The second document in existence at the time of the February 2014 ALJ hearing is a 2013 MRI of the right hip. Plaintiff has not offered good cause for failing to include the 2013 MRI results in the original record. Even if he had, the MRI is not material because it is unlikely to have changed the ALJ's decision.[46] The MRI detailed information already apparent in the record.[47]

---

[40] *Bass*, 499 F.3d at 513 (quoting *Sizemore v. Sec'y of Health & Human Servs.*, 865 F.2d 709, 711 (6th Cir. 1988)).
[41] 42 U.S.C. § 405(g); *see also Cline*, 96 F.3d at 148.
[42] *Hollon*, 447 F.3d at 484.
[43] *Sullivan v. Finkelstein*, 496 U.S. 617, 626 (1990).
[44] Doc. 17 at 16-17.
[45] The Sixth Circuit has also held that when a *pro se* applicant had legal representation at the time of the Appeals Council, and the attorney supplemented the record at that time, then a plaintiff's subsequent *pro se* status does not provide good cause. *Hollon*, 447 F.3d at 485; *see also Cline*, 96 F.3d at 149 ("Cline's lawyer elected to wait and submit the new evidence to the Appeals Council for the first time. This is clearly not good cause.").
[46] *Longworth v. Comm'r Soc. Sec. Admin.*, 402 F.3d 591, 598 (6th Cir. 2005).
[47] *See* Doc. 12-1 at 5 (noting the "[p]resence of aseptic necrosis").

Case No.15-CV-1473
Gwin, J.

### c. *Evidence from after Expiration of Insured Status*

The new evidence Plaintiff did submit in this case is not material.

The remaining new evidence post-dates the December 2014 expiration of Plaintiff's insurance. In addition to showing good cause and materiality, a claimant must prove that new evidence dated after the expiration of their insured status "relates back."[48] To "relate back," new evidence must refer to "a claimant's limitations prior to the date last insured."[49] Here, the critical date is December 31, 2014.

Plaintiff DeFrank submits four pieces of new evidence post-dating the expiration of his insured status: December 2015 medical assessments, a November 2015 MRI, a December 2015 audiology report, and an April 2015 arthritis report. None of these provide basis for a sentence six remand.

#### 1. *December 2015 Medical Assessments*

Dr. Rich completed two medical assessment forms on December 13, 2015. One referred to DeFrank's medical condition as of April 4, 2014. The other referred to DeFrank's medical condition as of October 2, 2015.

##### a. *Assessment Complete as of October 2, 2015*

The medical assessment referring to Plaintiff's medical condition as of October 2, 2015 does not justify a remand.[50] His condition as of October 2015 post-dates the expiration of his insured status and therefore does not "relate back" to the relevant period, March 1, 2012 to December 31, 2014.

---

[48] *King v. Sec'y of Health & Human Servs.*, 896 F.2d 204, 205 (6th Cir. 1990).
[49] *Walton v. Astrue*, 773 F. Supp. 2d 742, 750 (N.D. Ohio 2011).
[50] Doc. 12-2 at 1.

-10-

Case No.15-CV-1473
Gwin, J.

### b. *Assessment Complete as of April 4, 2014*

The other medical assessment details Plaintiff's April 4, 2015, medical condition.[51] This assessment is within the relevant period between the alleged onset date, March 1, 2012 and expiration of his insured status, December 31, 2014. Because it falls within the relevant time period, it does relate back. However, Plaintiff has not shown good cause or materiality.

Although a Plaintiff's *pro se* status "is relevant to the 'good cause' inquiry," it is not, alone, sufficient to show good cause.[52] Plaintiff DeFrank provides some explanation for not including the assessment earlier. In his objection he explained that his attorney did not have "his doctors fill these forms out before my hearing," and that "I didn't have access to it."[53] Still, Plaintiff has not explained why he could not obtain a similar report from Dr. Rich during the administrative proceeding, especially since many of Dr. Rich's other treatment notes are part of the record.[54]

Moreover, the assessment is not material. The Sixth Circuit has held that a remand is improper if the new evidence is "largely cumulative of evidence and opinions already present in the record."[55] The April 2014 assessment finds that Plaintiff DeFrank suffers from avascular necrosis of the hips. This information was already present in the administrative record. Accordingly, there is not "a reasonable probability that the [Commissioner] would have reached a different [decision] of the disability claim if presented with new evidence."[56]

Plaintiff has not met his burden to show good cause or materiality for the April 2014 medical assessment.

---

[51] Doc. 12-1 at 1.
[52] *Hollon*, 447 F.3d at 484.
[53] Doc. 17 at 5.
[54] *See, e.g.*, Doc. 9 at 346.
[55] *Longworth*, 402 F.3d at 598.
[56] *Hollon*, 447 F.3d at 484.

-11-

Case No.15-CV-1473
Gwin, J.

### 2. *November 2015 MRI Study*

Plaintiff presents a November 2015 MRI report. That report compared two MRIs of the right hip joint, from May 23, 2014 and October 15, 2015.[57] When compared to the May 23, 2014 study, the October study noted, "mild interval worsening of the bone marrow signal changes of the femoral head and degenerative joint disease."[58]

The study relates back to the relevant period since the study occurred before Plaintiff's insured status ended on December 31, 2014. Nonetheless, the MRI is immaterial. The ALJ already considered a range of objective medical evidence detailing Plaintiff's hip impairments.[59] Plaintiff DeFrank has not shown that the 2015 MRI report described DeFrank's ability to work has been further restricted. The report is not material since Plaintiff has not demonstrated that it would have changed the ALJ's determination.

Because Plaintiff has not shown that the MRI is material, we need not consider whether he has shown good cause for failing to include it earlier in the administrative process.

### 3. *December 2015 Audiology Report*

Plaintiff had a hearing test done in December 2015. It showed, "normal hearing for the left ear through 3000 Hz sloping to a mild hearing loss in the higher frequencies. The right ear exhibits severe hearing loss across frequencies."[60]

Because Plaintiff DeFrank had the hearing test after the expiration of his insured status, it does not relate back to the relevant period, March 1, 2012-December 31, 2014.

Even if the audiology report did relate back, Plaintiff has not shown that it is material. In order to have done so, Plaintiff DeFrank needed to explain how hearing loss prevented him from

---

[57] Doc. 12-2 at 4-5.
[58] *Id.*
[59] *See, e.g.*, Doc. 9 at 363-64, 375, 378-79, 383.
[60] Doc. 12-2 at 4.

-12-

Case No.15-CV-1473
Gwin, J.

engaging in substantial gainful activity. In his objection, DeFrank argues that, "I ha[ve] great difficulty understanding what people were saying. . . ."[61] This does not amount to materiality.

The ALJ already considered Plaintiff's auditory impairments in his decision. At the hearing, the ALJ asked, "Does [Plaintiff's right ear's partial deafness] affect your ability to or did it affect your ability to do any of the work you did in the past?"[62] Plaintiff responded, "It made it sometimes difficult to hear people if they were standing on my right side. Nothing bad ever happened. I often wondered though if . . . I was working into any type of industrial setting and someone said something to me about a possible threat . . . if I could injure myself or God forbid somebody else. I highly doubt that would ever happen, but I think about all sorts of different scenarios."[63]

Given that the ALJ heard DeFrank's concerns about his hearing, it is unclear how, if at all, the 2015 audiology report affects the record. Specifically, Plaintiff has not shown how the audiology report would have changed the ALJ's opinion.

### 4. April 2015 Arthritis Report

Finally, in April 2015, Dr. Adrian Butler found that DeFrank has "significant findings of painful symptomatic right thumb CMC arthritis."[64] Because Dr. Butler's April 2015 report post-dates the expiration of Plaintiff DeFrank's insured status, December 2014, it does not relate back.

Even if it did relate back, Plaintiff has not shown that this report is material. At the ALJ hearing, Mr. DeFrank already made clear at the ALJ hearing that he has trouble grasping his steering wheel, documents, and other miscellaneous items.[65] Plaintiff therefore has not shown

---

[61] Doc. 17 at 5.
[62] Transcript of Hearing at 50 (No. 9).
[63] Transcript of Hearing at 50 (No. 9).
[64] Doc. 12-4 at 1.
[65] Transcript of Hearing at 49 (No. 9).

-13-

Case No.15-CV-1473
Gwin, J.

how the April 2015 arthritis report would have altered the ALJ's decision, or how his right thumb arthritis impacts his ability to work.

The new evidence provides no basis for a sentence six remand.

### C. Questioning of the Vocational Expert

Plaintiff DeFrank's finally claims that the ALJ improperly questioned the vocational expert. Plaintiff argues that the ALJ "cut [the vocational expert] off," and "the ALJ *did* pressure her and she *did* hesitate when answering some of the questions."[66] Plaintiff DeFrank argues that ALJ pressure caused the vocational expert to change her answer to the ALJ's first hypothetical question.

We construe this claim as challenging the hypothetical question's adequacy.

The ALJ posed the following hypothetical to the vocational expert:

> I'd like for you to assume an individual of the claimant's age, education, and work experience with the following limitations: occasionally lift and carry 50 pounds; frequently lift and carry 25 pounds; stand or walk about six hours and sit six hours in an eight-hour workday with normal breaks, but the individual would be limited to standing or walking for two hours at a time; would also be limited to sitting for two hours at a time. So after two hours of sitting, the individual would need a break. After two hours of standing or walking, the individual would need a break. The individual can push or pull consistent with the lifting limitations; occasionally climb ladders or scaffolds; frequently climb ramps or stairs; frequently stop, kneel, crouch, or crawl. Could that individual perform any of the claimant's past work?

At first, the vocational expert responded that there would not be any job such an individual would perform because of the 15-minute break requirement every two hours. After some confusion over the hypothetical, the ALJ clarified his question.[67] He then asked whether this

---

[66] Doc. 17 at 3.
[67] After the ALJ posed this hypothetical, the following exchange to which Plaintiff DeFrank refers occurred:
"A I want to be clear--
Q Yes.
A -- that after two hours, he would need to take a break?

-14-

Case No. 15-CV-1473
Gwin, J.

hypothetical individual could perform any of Plaintiff DeFrank's past work if he had a fifteen-minute break after two hours of standing or walking, and a lunch break in the middle of the day. The vocational expert testified that such an individual could perform one of Plaintiff DeFrank's past positions, as well as other jobs available in the economy.[68]

After reviewing the record, this Court agrees with the Magistrate Judge that the ALJ did not improperly question the vocational expert.

Under Sixth Circuit precedent, an ALJ's hypothetical question to a vocational expert is proper if the question is supported by substantial evidence.[69]

---

Q Yes.
…
A Okay. With the break, he would not be able to go back to any of the jobs.
Q Would there be other work the individual could perform?
A No.
Q There's no work the individual can perform that only requires sitting for two hours at a time?
A He can -- yeah, there are jobs he can do where he only sits for two hours at a time, but a 15-minute break at the end of every two hours is the problem. Like he can get up --
Q Well don't those jobs allow a 15-minute break in the morning, a 15-minute break in the afternoon, and a half-hour for lunch in between?
…
A That's what I'm trying to clarify -- is that -- do you want it with just like the regular breaks that he would get in a day?
Q I'm saying he -- that the individual would not need the 30-minute break in the middle. I understand most employers would allow that. I'm talking a 15-minute break every two hours. I understand that most employers will give more than that. So if most employers will give more than that, how is it that there's no work such an individual can do?
A Well, that is what I was questioning -- was are we going with it so that there is a total of a one-hour break throughout the eight-hour day or is it more? Because the way you initially stated it, the way I understood it, is that we were over by another 15-minute break.
…
Q Could that individual perform the claimant's past work?
A He could perform the sales associate position.
Q Would there be other work such an individual could perform?
A Yes . . . ." Transcript of Hearing at 60-63 (No. 9).
[68] The past work included the sales associate job that Mr. DeFrank previously held. Such an individual could also perform the position of doorkeeper with 18,000 jobs available nationally and 480 jobs statewide. Such a hypothetical individual could also perform the position of washer with 300,000 jobs available nationally and 11,000 jobs statewide. Finally such a hypothetical individual could serve as an auto parts warehouse worker with 400,000 jobs nationally and 22,000 jobs statewide. Transcript of Hearing at 58-59 (No. 9).
[69] *Jones*, 336 F.3d at 478 ("In sum, it was entirely proper for the ALJ to present the vocational expert with the hypothetical he constructed, which did not reflect Ms. Jones's complaints . . . since the hypothetical was supported by substantial evidence in the record. We therefore affirm the Commissioner's final decision.").

-15-

Case No.15-CV-1473
Gwin, J.

"In order for a vocational expert's testimony in response to a hypothetical question to serve as substantial evidence in support of the conclusion that a claimant can perform other work, the question must accurately portray a claimant's physical and mental impairments."[70] "The vocational expert's testimony is directed solely to whether, given a claimant's age, experience, education, along with the ALJ's assessment of what [he] 'can and cannot do,' there exists a significant number of employment opportunities for h[im] in the regional and national economies."[71]

The question was proper. The ALJ asked what a hypothetical individual with claimant's age, experience, education, and physical limitations can and cannot do.[72] The question therefore sufficiently reflected Plaintiff's impairments.[73] Plaintiff DeFrank's argument that the ALJ influenced or pressured the vocational expert to change her answer loses.

D. *Ineffective Assistance of Counsel*

In his objection, Plaintiff DeFrank frequently mentioned his former attorney's ineffectiveness.[74] We construe this as an ineffective assistance of counsel claim.

---

[70] *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 516 (6th Cir. 2010); see *Howard v. Comm'r of Soc. Sec.,* 276 F.3d 235, 238 (6th Cir. 2002); see also *Webb v. Comm'r of Soc. Sec.,* 368 F.3d 629, 633 (6th Cir. 2004) (The hypothetical should provide the vocational expert with ALJ's assessment of the what the claimant "can and cannot do.").

[71] *Webb*, 368 F.3d at 633.

[72] See *id.* ("A hypothetical question need only reference all of a claimant's limitations, without reference to the claimant's medical conditions.").

[73] The hypothetical was also consistent with the ALJ's factual determination that Plaintiff DeFrank was able to engage in light work and perform work-related activities. Doc. 9 at 22.

[74] "I had poor legal representation at the time and my attorney did not do his job the way he should have. He did not have my doctors provide the ALJ with the physical assessment forms that I provided in my brief, which might possibly have made all the difference in the world. He did not have my doctors do anything . . . But again, I guess I should have hired a better lawyer with an actual degree and not one that acquired his by cutting out an ad in the back of Rolling Stone . . . . I'm sorry I didn't have any further evidence showing this to provide to the ALJ at my hearing. Again, I blame my attorney for not having me schedule a hearing exam. But as I've said already, the fact that my former attorney might be better suited as a fry cook at Burger King is nobody's fault but mine. I just hope that you will take this into consideration. In regard to the Commissioner's statement concerning the fact that the physical assessment form from Dr. Rich was not completed until December 2015 . . . again I must lay the blame on my attorney. He should have had my doctors fill these forms out before my hearing so that the ALJ would've had all the necessary evidence in front of him at the time." Doc. 17 at 2, 5.

Case No.15-CV-1473
Gwin, J.

In general, a plaintiff in a civil case does not have a right to effective assistance of counsel.[75] Similarly, there is no constitutional right to effective counsel for a Social Security claimant.[76]

This Court finds no basis for remanding the case based on ineffective assistance of counsel.

*E. Progression of Disorders and Diseases*

In his objection, Plaintiff emphasizes that the new evidence reveals a worsening condition of his impairments. If this is so, the appropriate remedy is for Mr. DeFrank to reapply for governmental benefits. The Sixth Circuit has held that when there is evidence that "reflect[s] the applicant's aggravated or deteriorated condition . . . the appropriate remedy [is] to initiate a new claim for benefits as of the date that the condition aggravated to the point of constituting a disabling impairment." [77]

The Plaintiff's motion to remand this case is denied, "but without prejudice to submit a new claim based upon new evidence of claimed disability."[78]

---

[75] *Lavado v. Keohane*, 992 F.2d 601, 604-05 (6th Cir. 1993) (citing *Reneer v. Sewell*, 975 F.2d 258, 261 (6th Cir. 1992)) ("The appointment of counsel to civil litigants is a decision left to the sound discretion of the district court, and this decision will be overturned only when the denial of counsel results in fundamental unfairness impinging on due process rights.") (citations omitted).

[76] *Strozier v. Comm'r of Soc. Sec.*, No. 4:10 CV 1351, 2011 WL 1584423, n.1 (N.D. Ohio Apr. 4, 2011), *report and recommendation adopted,* No. 4:10 CV 1351, 2011 WL 1585128 (N.D. Ohio Apr. 26, 2011) ("Although a claimant has a statutory right to counsel at Social Security proceedings, *see* 42 U.S.C. §§ 406(c) & 1382(d), there is no constitutional right to counsel at such proceedings, *see, e.g.*, *Brandyburg v. Sullivan*, 959 F.2d 555, 562 (5th Cir. 1992) ('The Supreme Court has never recognized a constitutional right to counsel at an SSA hearing.')".

[77] *Sizemore*, 865 F.2d at 712 (6th Cir. 1988).

[78] *Id.*

Case No.15-CV-1473
Gwin, J.

## V. Conclusion

For the foregoing reasons, this Court **ADOPTS** the Magistrate Judge's Report and Recommendation and **AFFIRMS** the ALJ's denial of benefits.

IT IS SO ORDERED.


Dated: July 19, 2016                                    *s/      James S. Gwin*
                                                       JAMES S. GWIN
                                                       UNITED STATES DISTRICT JUDGE